**Wendell GRAYSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–82–761.**

Court of Criminal Appeals of Oklahoma.

Aug. 21, 1984.

Rehearing Denied Sept. 11, 1984.

Johnnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Susan B. Agosta, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

On appeal from his conviction of Robbery With Firearms and Shooting With Intent to Kill, both counts After Former Conviction of Two Felonies, Case No. CRF–81–4518, and sentence of seventy-five (75) and one hundred fifty (150) years imprisonment, respectively, from the District Court of Tulsa County, Oklahoma, the appellant, WENDELL GRAYSON, raises four assignments of error.

On the evening of December 23, 1981, a man wearing a ski mask robbed the Family Market grocery store in Sand Springs, Oklahoma. The man was armed with a pistol and a sawed-off shotgun. During the robbery, he directly threatened a number of the store employees, most of whom were teenagers.

Responding to a silent alarm, two Sand Springs police officers arrived during the robbery. A shoot-out ensued inside the store, during which over a dozen shots were fired. Appellant was shot three times, and one of the officers was shot once. Fortunately, the officer was wearing a bullet-proof vest, and suffered no serious injuries. Unable to flee, appellant was apprehended in the store. As he was being carried out on a stretcher, he said to the store employees, "You all don't worry. I'll be back in six or seven years to get you all."

A co-worker of appellant testified that between noon and approximately 6:30 p.m. he and appellant drank five fifths of wine and smoked two marijuana cigarettes that had been laced with PCP (Phencyclidine). He stated that appellant did not know about the PCP, but that was contradicted by what appellant allegedly told officers at the scene of the robbery.

I.

Appellant's first assignment of error contends that it was error for the trial court to refuse his requested instructions on involuntary intoxication. The fact

of appellant's intoxication at the time of the incident was never really contested at trial. The only real issue was whether or not that intoxication was voluntary. The jury was properly instructed on voluntary intoxication.[1]

■ The primary difference between the two forms of intoxication is that the voluntary form is, by statute, a far more limited defense. 21 O.S.1981, § 153, see *Jones v. State*, 648 P.2d 1251, 1258 (Okl.Cr. 1982).

In *Jones v. State*, supra, we said:

"[i]nvoluntary intoxication is a complete defense where the defendant is so intoxicated that he is unable to distinguish between right and wrong, the same standard as applied in an insanity defense."

*Id.* at 1258.

Thus, in order to invoke the defense of involuntary intoxication, a defendant must produce sufficient evidence to raise a reasonable doubt as to the voluntariness of defendant's intoxication. See *Ake v. State*, 663 P.2d 1, 10 (Okl.Cr.1983), and *Norman v. State*, 648 P.2d 1243 (Okl.Cr.1982).

■ It is axiomatic that a defendant is entitled to an instruction on a defense when there is sufficient evidence on record to support the defense. See e.g. *Davis v. State*, 665 P.2d 1186 (Okl.Cr.1983). However, in the present case, we cannot say appellant even reached the minimal requirement of producing sufficient evidence to raise a reasonable doubt. This is especially true in light of the strength of the state's rebuttal evidence.[2] Therefore, appellant was not entitled to an instruction on

involuntary intoxication, and this assignment of error must fail.

## II. and III.

In his second and third assignments of error, appellant claims that improper remarks and questions by the trial judge and prosecutor prejudiced him. Those comments not subsequently cured by correction or sustained objection and admonishment are: Two statements within hearing of the jury, by trial court to defense attorney, that his question during voir dire was "unfair;" attempts by prosecutor to define "reasonable doubt;" questioning by prosecutor of defense witness as to whether appellant had lied to doctors and smoked marijuana on previous occasions; and statements by prosecutor in summation that defendants should not be able to drink or take drugs, then "go rob somebody and then be able to walk right out the door."

■ We cannot condone these statements; indeed, we expressly denounce them as improper. Nonetheless, in light of the overwhelming evidence against appellant, we don't think he was prejudiced by an amount requiring reversal.

## IV.

In his fourth and final assignment of error, appellant alleges that the trial court's violation of 22 O.S.1981, § 894 necessitates reversal. We cannot agree. The statute requires, essentially, that when the jury has a question on a point of law, they are to be brought into court, and with counsel for both sides present, informed of the law. In the present case, the trial judge answered two interrogatories from

---

1. Instruction number seven reads:

    "You are further instructed that under the laws of the State of Oklahoma, no acts committed by a person while in a state of voluntary intoxication caused by alcohol or any other drug shall be deemed less criminal by reason of his having been in such condition. The jury may, however, consider his condition in determining if the defendant was capable of forming the necessary criminal intent in the charge of Shooting with Intent to Kill, as alleged in Count II of the information. You may not consider

    intoxication in arriving at your verdict as to Count I, Robbery with Firearms."

2. The only evidence that appellant's intoxication was involuntary was the co-worker's statement that appellant did not know about the PCP on the marijuana. But, appellant had still voluntarily injested a large amount of alcohol and drugs. Further, on the night of the robbery, appellant told police he had taken PCP, thereby refuting the contention that he was unaware of it.

the jury[3] without following the statutory procedure.

■ We have long held that the violation of this statute creates a presumption of prejudice to a defendant. See e.g. *Queen v. State*, 497 P.2d 441 (Okl.Cr.1972). But we have also held that presumption may be overcome on appeal if the record shows no prejudice to defendant occurred. *Wilson v. State*, 534 P.2d 1325, 1327 (Okl. Cr.1975). Since the judge's responses were entirely correct, limited in scope, and essentially the same as would have been given had the statute been strictly followed, the presumption of prejudice is overcome in this case.

Accordingly, the judgment and sentence is **AFFIRMED.**

BRETT, J., concurs.

BUSSEY, P.J., concurs in results.

---

3. **Note I:**
   Question from jury: "Do we determine if sentences will run concurrently or consecutive[?]" /s/ [jury foreman]. Answer from judge: "No." /s/ Judge Hopper.
   **Note 2:**
   Question from jury: "Is there a guideline that establishes what percent of a term of a sentence must be served before eligible for parole [?]" /s/ [jury foreman]. Answer from judge: "This is not for your consideration." /s/ Judge Hopper.